Thomas M. Burton (USB 00518)(CSB035856)
P.O. Box 1619
Salt Lake City, Utah 84110
(801) 918-1656
thomasburtonlaw@ao.com

FILED
U.S. DISTRICT COURT

2014 APR -3 ⊃ 12: 2 1

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE CENTRAL DISTRICT OF UTAH

Case: 1:14cv00041
Assigned To : Furse, Evelyn J.
Assign. Date : 4/3/2014
Description: Blank v. Nuszen et al

MIRIAM BLANK, an individual and
guardian ad litem for her daughter, H.N.,
a minor,

                Plaintiffs,

vs.

JACK NUSZEN; BAIN CAPITAL; ASPEN
EDUCATION GROUP; ASPEN INSTITUTE OF
BEHAVIORIAL ASSESSMENT; HARRIS
COUNTY OFFICE OF HUMAN RESOURCES
AND RISK MANAGMENT, an entity corporate
and politic; GUARDIANS OF HOPE, a Texas
corporation; NORMA WILLCOCKSON; and
DOE DEFENDANTS I through X, inclusive,

                Defendants

COMPLAINT FOR CIVIL RIGHTS
VIOLATIONS; NEGLIGENCE; BREACH OF
FIDUCIARY DUTY; CONSPIRACY AND
FRAUDULENT CONCEALMENT;
TEMPORARY RESTRAINING ORDER;
CIVIL HABEAS CORPUS.

1

Comes now the plaintiff, MIRIAM BLANK, who alleges as follows:

## NATURE OF THE CASE

1.  The case charges Harris County, Texas, and the Aspen Institute of Behavioral Assessment (Aspen) and others with depriving a Mother and her daughter, H.N., a 16 year-old girl, of her civil rights.  The County usurped the Mother's constitutional right to raise her child.  The Mother and the child committed no crime.  The child does not need behavior modification, ostracism, therapy, medication, or removal from her mother's presence, home, or from the State of Texas.

2.  Yet, the County, either directly or indirectly allowed the child's removal against her will and without her consent to a locked-down, isolated, clandestine, and guarded residential treatment center located in Utah.  These centers fraudulently market themselves as boarding schools, academies, therapeutic treatment centers, ranches, or wilderness programs.  Their advertised purpose is behavior modification treatment for trouble teens.  Their success is as vacuous as is their propaganda.  Their credentials are minimal while their fees are extravagant.

3.  These facilities are in truth private prisons, except that their residents are not lawfully locked up, but illegally locked up against their will and without their consent for having committed no crime and having done nothing wrong,; they are often kidnapped by "escorts" and taken illegally across state lines.

4.  H.N. had no hearing as to why she was taken away and locked up.  There was no forum for complaint, for explanation, for appeal, or protest against the placement, either before, during, or after it occurred.  The only option was to run away, but these

2

private prisons are often located in remote areas and are closely guarded in any event. Successful runs are rare, and most often police retrieve the escapee.

5. Once confined, no contact with the outside world is allowed, except with the persons transferring custody to the prison. Contact with family members or friends is not allowed, and even contact with the family member or agency that transferred full and complete custody to the prison is monitored, and the inmate knows that any disparaging remark or complaint about the prison will be punished by a loss of all privileges earned, meaning having to start at the bottom all over again to rise from level to level by successfully completing mindless tasks of blind obedience.

6. The hapless minors will soon learn that they can be locked up for their entire minority as long as there is money to pay for it. The custody transfer agreements allow the private prisons to do anything they want to the minors and can enforce compliance with their demands by punishment, sometimes extremely harsh, medication at the handlers' discretion, forced disclosure of private deeds or thoughts, public confession of past deeds or thoughts, etc.

7. What the private prisons do to the minor children whom they have incarcerated, if done by their parents or custodians on the outside, would be swiftly prosecuted as child abuse and false imprisonment.

8. These helpless children can be deprived of freedom, of contact, correspondence, and communication with family and friends, or anyone outside the compound; they can be deprived of legal counsel; of sleep, food, privacy, dignity, education; compensation for their labor; the right to refuse treatment or enforced medication; or the need of a second opinion regarding the propriety of the treatment forced upon them; of the right to grieve, to object, to recourse, or to appeal; Harris County made no

3

investigation of the private prison where it allowed H.N. to be sent.

9. The County refused to read or even consider the United States Government Accountability Office 2007 report of testimony before the House of Representatives Committee on Education and Labor titled "Concerns Regarding Abuse and Death in Certain Programs For Troubled Youth" concluding:

> "GAO found thousands of allegations of abuse, some of which involved death, at residential treatment programs across the country and in American-owned and American-operated facilities abroad between the years 1990 and 2007. Allegations included reports of abuse and death recorded by state agencies and the Department of Health and Human Services, allegations detailed in pending civil and criminal trials with hundreds of plaintiffs, and claims of abuse and death that were posted on the Internet. For example, during 2005 alone, 33 states reported 1,619 staff members involved in incidents of abuse in residential programs. GAO could not identify a more concrete number of allegations because it could not locate a single Web site, federal agency, or other entity that collects comprehensive nationwide data."

10. H.N. was a good student, not truant, and not mentally ill. The County, on insufficient evidence, considered her mother's home unsafe. The Father who had previously abused H.N. unlawfully got custody of H.N. and immediately, in order to torment the plaintiff, sent H.N. to an undisclosed "treatment" center in Utah, which refuses to allow Plaintiff to know anything about her daughter, even during her parenting time, or where she is, and why she is wherever she is.

11. In any event, Harris County authorized the removal of H.N. against her will, without her consent, and for no stated reason, to be locked up out of state for an indeterminate term at a locale or locales that refuse to allow her mother or her

attorney to visit with her in order to determine her welfare or wishes, and will not

disclose even her whereabouts.

## JURISDICTION AND VENUE

12. This action arises under the Third, Fourth, Fifth, Sixth, Eighth, and Fourteenth

Amendments to the Constitution of the United States, under Federal law,

particularly Title 42 of the United States Code, Section 1983, and under Title 28, of

the United States Code, Section 2241.  The court has jurisdiction of her cause under

and by virtue of Title 28 of the United States Code, §§ 1331 and 1343, and the

doctrine of pendent jurisdiction

## PARTIES

13. MIRIAM BLANK is a resident of Harris County Texas.  She is Guardian ad Litem

for H.N., her minor daughter, who is also a resident of Harris County, Texas, but is

now being held captive by Aspen Institute of Behavioral Assessment in Utah.

14. JACK NUZSEN is a resident of Harris County, Texas, and the father of H.M., a

minor, whom he has had removed from Texas to thwart the Plaintiff's visitation rights,

and to spite and torment the Plaintiff.  H.N. is not in need of any isolation from Harris

County or treatment not available in Harris County, Texas, and has been taken away

from Harris County against her will and without her consent in violation of her

constitutional rights.

15. NORMA WILLCOCKSON is a resident of the State of Texas, and is responsible for

illegally and without an interstate compact, transporting H.N. against her will and

without her consent from Harris County, Texas to Weber County, Utah where she is

held a prisoner by the Bain Capital, CRC Health Group, and Aspen Education Group.

16. BAIN CAPITAL is an asset management and financial services company based in Boston, Massachusetts and is a citizen of Massachusetts.

17. CRC Health Group is the largest provider of specialized behavioral health care services in the United States and is headquartered in Cupertino, California.

18. ASPEN EDUCATION GROUP was acquired by Bain Capital for $300 million. Bain bought it because in 2005, the *New York Times* reported that analysts estimated that companies like Aspen had profits between 10 and 20 percent of their revenues. It is a citizen of California.

19. ASPEN INSTITUTE OF BEHAVIORAL ASSESSMENT is a Utah licensed residential treatment center owned by Aspen Education Group and is a citizen of the State of Utah.

20. HARRIS COUNTY OFFICE OF HUMAN SERVICES AND RISK MANAGEMENT is a public entity corporate and politic. Its stated purpose is to protect and promote the welfare of all children; prevent, remedy, or assist in the solution of problems which may result in the neglect, abuse, or exploitation of children; prevent the unnecessary separation of children from their families; restore children back to their families after they have been removed; identify children to be placed in suitable adoptive homes in cases when restoring them to their biological family is not possible or appropriate; and to assure adequate care of children away from their homes in cases when the child cannot be returned home or cannot be placed for adoption.

21. GUARDIANS OF HOPE is a Texas corporation that is a human trafficker that illegally took H.N. from her school and transported her across State lines from Texas to Utah against her will and without her consent.

22. NORMA WILCOCKSIN is a Texas resident who owns and operates Guardians of Hope.

23. DOE DEFENDANTS 1 THROUGH 10 are persons presently unknown to the plaintiff who will be added to the complaint when their identity is ascertained. In all things herein alleged and at all times material, all defendants were acting as agents for, or joint adventurers with, the other defendants, and were also acting in furtherance of a conspiracy to commit the acts or suppress the facts herein alleged.

## FACTS

24. Jack Nuszen has used the biased Harris County Family Court system to cast Miriam Blank as an unfit mother to their five children. Although he is guilty of physically abusing N.H., he has, by falsely obtained court orders and engaging a human trafficking service, removed H.N. from her school where she was an outstanding student and well-adjusted young woman, and against her will and without her consent, forced her relocation from Texas to Utah, where she is confined by the defendant Aspen against her will and without her consent in one or the other of its locked down compounds. There, she is locked up for an indefinite time having done nothing wrong or truant solely to deprive her of her freedom and cause extreme anxiety to Miriam Blank, her mother, as to her whereabouts and welfare.

25. Miriam Blank has copies of bills submitted by Aspen to Jack Nuszen for alleged services rendered to H.N. Notwithstanding the bills, copies of which Miriam Blank has, due to being asked to pay them by Jack Nuszen, Aspen refuses to provide any information about H.N., the alleged beneficiary of said services, whatever they are.

26. Miriam Blank has a constitutional right to know about and to have access to her daughter, and accordingly must bring this action to enforce both her rights and those of her daughter

against the defendants listed above.

27. The County and its agents either know or should know that Aspen and its co-defendants incarcerate and isolate minors for an indefinite period of time who have never been adjudicated as truant or violators, and throw them in with other minors who may have been highly truant and adjudicated as misdemeanants, or who may have various forms of mental illness, criminal records, or drug addictions.

28. The County and its agents well know that their forcing H.N. into a private prison violated H.N.'s constitutional rights to privacy, due process, both procedural and substantive, equal protection, free speech, false imprisonment, right to a speedy trial, freedom from seizure, involuntary servitude, and cruel and unusual punishment, and yet the County and its agents are deliberately indifferent to the illegality of their conduct.

29. The County and its agents know that the prefrontal cortex of H.N. is not fully developed and that its complicity in inflicting upon her undeserved gross and unfair punishment will have a permanent deleterious effect upon her mental and emotional development, and will at the very least, cause her to suffer into adulthood the ravages of post traumatic stress.

## CLAIM ONE
(Deprivation of Civil Rights Under Color of Law, 42 USC § 1983)

Defendants violated the plaintiff's civil rights protected by 42 USC §1983 and the United States Constitution in the following respects:

### a.      Fourth Amendment (Unlawful Search and Seizure):

Defendant County actors violated H.N.'s Fourth Amendment rights against unlawful search and seizure by facilitating her forcible incarcerating in a private prison, where she is being kept against her will and without her consent for no legal infraction or any other legitimate reason except to remove her from her mother and deprive both of them of any visitation.

b.      **Fifth and Fourteenth Amendments (Due Process and Equal**

**Protection):** Defendants abridged H.N.'s right to due process in that she was

incarcerated without notice of charges or a hearing thereon. The County made

no investigation into the credentials or conditions of other minors with whom

she would be incarcerated or whether she would be contaminated by other

minors' problems, experience, disposition, or the alleged therapeutic practices

and procedures to which they would be subject, or any determination of the

term of incarceration or the medications that would be forced upon her at the

sole discretion of her handlers.  Harris County's providing for and allowing

the confinement of H.N out of state violates the Equal Protection clause of

Article One, Sections 3 and 3a of the Texas Constitution and Amendment XIV

to the federal constitution. The County has put H.N. at a severe disadvantage

as compared to adolescents attending Harris County public schools

maintaining a lawful and safe habitation with a State approved curriculum

and guaranteed teacher proficiency, thus violating H.N.'s right to equal

protection.

c.      **Thirteenth Amendment; (involuntary servitude and**

**slavery):**  Section One of the Thirteenth Amendment of the United States

Constitution provides in pertinent part, "[n]either slavery nor involuntary

servitude....shall exist within the United states or any place subject to their

jurisdiction." U.S. Const. Amend. XIII, § 1.  Section One of the Thirteenth

Amendment is self-executing, abolishing slavery and involuntary servitude

without any ancillary legislation.  Section One of the Thirteenth Amendment

prohibits the conditions of slavery and involuntary servitude without regard

to the identity or age of the victim.  Although enacted in the historical context of African slavery, the Supreme Court has repeatedly declared that the Thirteenth Amendment is not so limited.  Because the Amendment forbids any form of slavery, it embodies a principle that can be (and over the years has been) defined and expanded by common law to address morally unjust conditions of bondage and forced service existing anywhere in the United States.  Moreover, our Constitutional jurisprudence is the story of the courts' interpreting, applying, and expanding Constitutional protections to new groups and circumstances.  A constitutional "principle, to be vital, must be capable of wider application than the mischief which gave it birth." *Weems v. United States*, 217 U.S. 349, 373-374 (1910).

As described herein, complicit Defendants are holding H.N. in slavery in violation of Section One of the Thirteenth Amendment by, among other things:

> a.  holding H.N. in physical and psychological captivity to the Defendants' demands and compelling her to serve Defendants' interests in exploiting money from her deluded father and Harris County;
>
> b.  keeping H.N. by physical means and other coercion with no means to escape and no choice or viable alternative except to perform services for the Defendants;
>
> c.  Keeping H.N. separated from her mother;

10

d.  Depriving H.N. of the ability to engage in or determine her own course of action or way of life;

e.  Exploiting H.N.'s vulnerabilities for the purpose of breaking down her free will, and causing her to become a compliant and mindless slave of Defendants' demented behavior modification programs that have no stated goal or treatment plan other than to torment H.N.;

f.  Intentionally subjugating HN.'s will, desires, innate drives and natural instincts to Defendants' wills and whims;

g.  Keeping H.N. continually and constantly confined in unnatural, stressful, and tortuous circumstances;

h.  Forcing H.N. to subject herself wholly and completely to Defendants' control and to their mental, emotional, and physical demands so as to make her lose her individual identity and will.

(Thirteenth Amendment: **Involuntary Servitude**}

Section One of the Thirteenth Amendment also abolishes "involuntary servitude", a term with a broader meaning than slavery, abolishing any state of bondage in the country, of whatever name or form.  While the outer limits of the common law prohibition against "involuntary servitude" are not

currently established, at a minimum, and as used in this case, it involves the rights to one's own life and liberty, to labor for one's own benefit, and to be free from physical subjugation or coercion by another.

d.  **Conspiracy:** defendants, and each of them conspired to deprive H.N. of her constitutional rights by imposing upon her without any grounds whatsoever and without the least investigation of her individual needs, educationally, psychologically, socially or medically, and the matching of those needs, if any, to a comprehensive treatment plan individually suited to her, with some assessment as to the length of treatment, the capability of the particular institution best equipped to provide such treatment, the expected length of such treatment; the specific goals of such treatment; and the specific manner and methodology of meeting the treatment goals.  It is obvious that locking H.N. up without an assessment in which she and her mother would participate, and putting her in the full and complete custody of captors of no particular merit and throwing her in with other prisoners whose ages, conditions, experience, problems, and influence upon H.N. is unknown or of no interest, is positively on its face damaging.

e.  **8th Amendment: Cruel and Unusual Punishment:** Defendants' locking H.N. without fault into a private prison without due process, either

procedural or substantive, for an indefinite term bounded only by her

reaching majority, without any description of the kinds of regimen that

would be employed to bring about some unspecified change in her, and

subjecting her to the full and complete custody of such prisoners to do with

and what to them as they pleased without oversight, opportunity to grieve

their plight, or to obtain legal counsel, or to have any visits or other contact

with the outside world, violates the 8th and 14th Amendments prohibiting

cruel and unusual punishment.

30. As a proximate result of the acts and conduct of the defendants, the plaintiffs H.N. and her mother have been and are being damaged in the privileges and immunities of national and state citizenship, and are suffering grievous mental and emotional distress and loss of freedom and property because H.N. has the right not to be locked up and Miriam Blank has the right to rear and raise her daughter without State interference.

### CLAIM TWO

#### (Negligence)

30.. Plaintiffs incorporate by reference all previous allegations above stated.

31. In addition to allegations of neglect, as described heretofore, the Defendant Aspen acted in breach of its duty to provide a safe, nurturing, fair, clean, competent, facility and staff to help struggling young persons heal from psychological and emotional maladies troubling them.  H.N. was not such a person, so that her incarceration could only be harmful and damaging to her.

32. Aspen negligently admitted H.N. to its facility and keeps her there not for treatment that she does not need, but only in order to collected is exorbitant fees from her designing father and to hurt her mother by depriving her of any knowledge of the location and condition of H.N. or the lawful visitation with which right she is vested.

33. WHEREFORE, Plaintiffs pray for judgment as hereafter stated.

## CLAIM THREE

### (Breach of Fiduciary Duty)

34. Plaintiffs incorporate herein all prior paragraphs.

35. defendants Aspen owes to H.N. the highest duty of trust and confidence but refuses and fails to act in her best interest.

35. Defendants' private prison actions and inactions, described herein, in view of the high degree of control having been given it by the father's signing over full and complete custody to it, has no incentive whatsoever to act with the highest degree of trust and confidence to protect H.N. from physical, emotional and mental abuse because the father has already waived in writing any liability that Aspen would otherwise have for failing to do so. H.N., being locked up in Aspen as a prisoner, and disciplined severely for any minor infraction of mindless rules, is unable to care for or make decisions for herself, and, being a virtual prisoner, is owed a fiduciary duty.

36. By failing to take steps to prevent, detect, and minimize the harm from a round of

14

daily abuse, Aspen is in breach of its fiduciary duty to H.N. and her mother.

WHEREFORE, Plaintiffs pray for judgment as hereafter stated.

## CLAIM FOUR

(Conspiracy and Fraudulent Concealment

37. Plaintiffs incorporate herein all prior paragraphs.

38. Aspen fraudulently conceals the fact that it engages in a pattern and practice of forcing

H.N. to work several hours per day without compensation.

39. Defendants suppress and minimize public knowledge of the rampant physical, emotional,

mental abuse of H.N. by teachers, supervisors, and staff, and plan to take a uniform

position and approach of denial as to the handling of reports of abuse.

40. Aspen and its staff and employees fraudulently conceal by its web site, endorsements, and

other means the fact that it commits acts of negligence, gross negligence,

misrepresentations, fraud and the other wrongful conduct described herein, and engage in

concerted action to commit such wrongful acts.

41.  In the absence of concealment, public authorities, the media, and others would have

issued general and specific warnings to the parents of children enrolled at Aspen.

42. Had Aspen not practiced concealment, and had a proper warning been issued, the physical,

emotional and mental abuse of H.N. would not happen.  Moreover, the theft of the value of

H.N.'s work, deprivation of her educational opportunities, and permanent damage to her

future earning capacity, would not occur. Thus, Aspen's actions in furtherance of its

15

conspiracy to conceal are a proximate cause of the ongoing injury and damage sustained by H.N. as reported herein.

43. As a part of its conspiracy to conceal the physical, mental, and emotional abuse of children by the offending teachers, supervisors, and staff, as well as the theft of the value of H.N.'s work and her opportunity to receive even a minimally sufficient education, Aspen follows a practice of refusing to stamp out suspected abuse despite actual notice of the risk, or at least, having been warned of such risk by Plaintiff's Texas counsel at hearings before the Harris County Courts on multiple occasions.

44. Harris County conceals and fails aggressively to address abuse issues by such actions as failing to investigate such private prisons and, to the contrary, actually endorses and recommends them to County officers and agencies as positive institutions instead of abusive private prisons.

45. The purpose of Aspen's conspiracy prevents criminal prosecution, avoids adverse publicity, prevents claims for damages by numerous child victims and their parents, and avoids exposure of its conspiracy designed to conceal the claims arising from the conduct of these private prisons and their advocates, such as the defendants before the Court.

WHEREFORE, Plaintiffs pray for judgment as hereafter stated

## CLAIM FIVE

### (Temporary Restraining Order)

46. Plaintiffs incorporate by this reference paragraphs as if fully restated.

47. . H.N. is a citizen of the State of Texas confined against her will and without her consent at Aspen, a private prison in Utah.   Her confinement has been ordered, endorsed, or allowed by Harris County authorities at the behest of Jack Nuszen with the intent to keep H.N. locked up for the balance of her minority.

48. There is no legal or therapeutic basis for H.N.'s confinement.  She is without addictions, mental illness, criminal history, violent behavior, or truancy.  She is not suffering from a mental or emotional illness, which in any event, would only not require the mistreatment she is receiving, but would be exacerbated by it.  There has been no determination that being locked up in another state without mail, visitors, or communication with anyone on the outside is in H.N.'s best interest.  There has never been a credentialed decision that her confinement is the least restrictive method of treatment, even were treatment ever to have been warranted, which it was not.  There is no provision for a revue hearing to measure her progress to see whether or not she is in a condition to be released, whatever that condition is, or however it is measured.

49. Plaintiff and H.N. were never given notice of H.N.'s prospective abduction and imprisonment out of state; were never allowed a hearing in which they could participate in the decision to abduct and confine H.N.  H.N. was never allowed to speak with regard to her incarceration.  She was never allowed counsel.  She was never notified about the place or length of her confinement or the need for it.   There is no limit upon her confinement except her reaching majority in two more years.

50. H.N.'s confinement is thus illegal

51. H.N. is mature enough under Texas case law and statutes and the 14th Amendment to the United States Constitution to decide for herself whether or not to be confined against her

will and without her consent by Aspen or anyone else, or at the very least to have some say in her confinement and detention.  She, having a loving mother, need not be committed to the custody of anyone, and may be either emancipated under the law or select her own custodian.  Plaintiffs believe that, given the choice, H.N. will select Miriam Blank to live with.  In addition, Plaintiffs believe that there is ample evidence, if necessary, to show that H.N. is entitled to be free from Aspen 's dominion.

52. Miriam Blank has no other plain, speedy, or adequate remedy at law because she has repeatedly petitioned and complied with all Harris County requirements, and otherwise sought to contact H.N. by every lawful manner or means possible, to no avail.

WHEREFORE, Miriam Blank and H.N. are entitled to an order of this Court restraining Aspen from further keeping H.N. until such time as it can demonstrate by independent professional opinion that H.N.s confinement at Aspen is in her best interest.

## CLAIM SIX

### (Civil Habeas Corpus)

53. Plaintiffs incorporate by this reference all prior paragraphs as if fully restated.

54. Harris County's flouting the provisions of the constitutions of Texas and the United States has, in part, been responsible for the injuries sustained by H.N.

55. Harris County has a responsibility under the police power that it holds to protect the health, safety, and welfare of its resident citizens, including H.N., but it has not only failed to do so, but has provided and allowed H.N. to be shipped against her will and without her consent or notice to the defendant, Aspen, a punitive privately operated prison in Utah, to be there confined and abused without oversight or responsibility for an indefinite term bounded only by the expiration of her minority.

56. .Accordingly, Plaintiff H.N. seeks to gain her freedom of which defendants have depriver

her in violation of her right to procedural and substantive due process of law guaranteed by Article One of the Texas Constitution, Article One, Sections 1 and 7 of the Utah constitution, and the 13th and 14th Amendments to the federal constitution.

57. H.N. was born on March 13, 1998 and is 16 years old. She is a resident of Harris County, Texas. Defendants or their agents abducted her from Harris County and forcibly incarcerated her in Weber County, Utah because of her father's false notion, mysteriously subscribed to by Harris County officials without any evidence or foundation, that she needed punitive behavior modification when, in reality, she was a stellar student in no wise truant, disobedient, defiant, or psychologically impaired.

58. Miriam Blank, therefore on behalf of her daughter, H.N. petitions this court for a writ of civil habeas corpus to compel Aspen to produce H.N. before this Court to be examined regarding the propriety, legality, and constitutionality of her incarceration by Aspen.

### VERIFICATION

Thomas M. Burton, declares as follows:

1. I am counsel for the plaintiff/Petitioner in the subject action and have personal knowledge of the facts stated in the foregoing Petition, except those recited upon information and belief, as to which I believe them also to be true and correct.

2. I represented in this Court Daniel Shaden against Aspen Health Services, No. 2:96 CV 477 G and have had numerous other suits against the Aspen organization in California. Based upon this experience, I know something of the methodology of Aspen Health Services and similar organizations aimed at breaking a child down by forced obedience in a harsh and isolated environment so as to render her codependent and compliant with her captors'

every whim and wish.  To subject a child to this regimen invariably causes

posttraumatic stress syndrome, and other disorders due to the still formative

nature of the prefrontal cortex of the adolescent's brain that is not fully

matured until the approximate age of 25 years of age.

3. Based upon the facts related to me by Miriam Blank, about her daughter, I

believe that Aspen in Syracuse, Utah is unlawfully, unfairly, and detrimentally

holding H.N. and that she is entitled to immediate release.

This verification is made under penalty of perjury under the laws of the State

of Utah on March 26, 2014 at Salt Lake city, Utah.

_____
/s/

Thomas M. Burton

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1.   A writ of Habeas Corpus producing N.H. before the Court in Utah to be examined as to
her present circumstances and as to whether or not she needs to be released from Aspen
in Utah and returned to her mother in Texas.

2.   Injunctive relief in the form of an Order enjoining further possession of H.N. by Aspen,
and immediately releasing H.N. and transferring legal and physical custody to her
mother, Miriam Blank so that she may provide for education at legitimate schools in
Harris County, Texas before H.N. falls further behind academically.

3. General damages according to proof.

4. Punitive damages according to proof.

5. Costs of Suit.

6. Such other and further relief that the Court deems just.

Dated: March 26, 2014

Thomas M. Burton